**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE**

| | |
|---|---|
| **JERRY ALDRIDGE, ET AL.** | |
| **Plaintiffs,** | |
| **v.** | **Case No. 3:21-CV-0082** |
| **REGIONS BANK,** | |
| **Defendant.** | |

**REGIONS BANK'S REPLY BRIEF IN SUPPORT OF RENEWED PARTIAL MOTION TO DISMISS COUNTS II – V OF PLAINTIFFS' AMENDED COMPLAINT**

Plaintiffs do not deny that ERISA broadly preempts "any and all State laws insofar as they may . . . relate to any employee benefit plan," 29 U.S.C. § 1144(a). Instead, they assert that there is a clear distinction between their ERISA claim in Count I, which they say is based on the Ruby Tuesday, Inc. Executive Supplemental Pension Plan and the Morrison Incorporated Management Retirement Plan (the "ERISA Plans"), and their state-law claims in Counts II through V, which they contend are based on the Trust Agreement that acts as the funding mechanism for those ERISA Plans. The substance of Plaintiffs' claims, however, melts away this formalistic distinction entirely, revealing that Plaintiffs' "state-law" claims are inextricably intertwined with and related to the ERISA Plans. Indeed, all of Plaintiffs' claims require the existence and interrelation of both the Trust Agreement, under which Defendant Regions Bank ("Regions" or "Defendant") undertook its only obligations related to Plaintiffs and the Plans, and the other documents governing the Plans, from which Plaintiffs derive all of their alleged rights in this case as ERISA Plan participants. As a result, Plaintiffs' state-law claims fall squarely into the categories of claims generally found preempted by ERISA, and Plaintiffs' reliance on the termination of the Plans and

wanting to pursue particular claims and relief do not alter that conclusion. Plaintiffs' state law claims unequivocally seek benefits under, and arise out of and relate to the administration of, the ERISA Plans, and Plaintiffs' state-law claims are due to be dismissed as preempted under ERISA.

ARGUMENT

**I.** **Plaintiffs' characterization of their state-law claims as based on the Trust Agreement and unrelated to the ERISA Plans is smoke and mirrors, attempting to hide the fact that those claims depend entirely on the existence and application of the ERISA Plans' terms.**

Plaintiffs are attempting to skirt ERISA's broad preemptive scope by arguing that Regions has mischaracterized their state-law claims as essentially the same as their ERISA claims. (*See* doc. 25 at 3-4). Plaintiffs' basis for this assertion is the superficial distinction that their ERISA claims are based on the ERISA "Plans" and their state-law claims are based on the "Trust Agreement." (*See id.*). But this argument is the height of form over function. The question is not whether Plaintiffs can point to any document labeled separately from "the Plans" regardless of its connection to them; the question is whether Plaintiffs' *claims* "relate to" the Plans.

To support their superficial distinction between their ERISA and state-law claims, Plaintiffs argue that the Trust Agreement states that it is "governed by Alabama law," as though that is somehow proof positive that it cannot be governed by ERISA. (*See* doc. 25 at 6). However, what the Trust Agreement *actually* states is that it is to be construed "according to the laws of the State of Alabama *and, to the extent applicable, according to the laws of the United States*." (Doc. 19-3 at 18 (§ 13(j)) (emphasis added). This is the same governing law language as in the Morrison Incorporated Management Retirement Plan. (*See* doc. 19-2 at 14 (§13.02) ("The Plan shall be construed in accordance with and governed for all purposes by the laws of the State of Alabama, and to the extent applicable, by the laws of the United States of America")). Plaintiffs do not even attempt to explain how language, which appears in almost identical form in one of the

2

undisputedly ERISA-governed Plans and which simply chooses the application of a particular state law where not preempted by applicable federal law, renders the Trust Agreement somehow unrelated to the Plan or exempt from a law of the United States with the broad preemptive power of ERISA.

Plaintiffs also contend that the Trust is merely a funding mechanism for the Plans and is not the Plans themselves so that Plaintiffs' reliance on the Trust Agreement's language is based on a "separate and distinct" agreement outside of ERISA. (*See* doc. 25 at 5-6). But that argument is tantamount to arguing that an insurance policy that funds a plan does not "relate to" the plan itself because it is merely the "funding mechanism" for the plan. The fact that the Trust Agreement is a "funding mechanism" for the ERISA Plans and governs the mechanism for how the Plans' benefits are paid means that it is necessarily "related to" the Plans and the administration of those Plans.

This is illustrated perhaps mostly clearly by the fact that the trust does not have any beneficiaries outside of the participants and beneficiaries under the Plans. Instead, the Trust Agreement incorporates the terms of the Plans (*see* doc. 19-3 at 2 (§ 1)), and every reference to beneficiaries in the Trust Agreement is in reference to a "participant or beneficiary under the Plans" or similar language involving only ERISA Plan participants and beneficiaries of ERISA Plan participants (*see, e.g., id.* at 8 (§ 5(b)), 10 (§ 6(e) and (f)), 11 (§ 6(h)), 13 (§ 8(c)), 15 (§ 11(b), (c)), 16 (§ 12(a), (b)), 17 (§ 13(b))). All of Plaintiffs' claims against Regions—under ERISA and under state law—are based entirely on the Trust Agreement's inextricably intertwined relationship to the ERISA Plans. Regions has no duties to Plaintiffs outside of their status as Plan participants or beneficiaries and the only alleged breaches involve failures to make payments of ERISA Plan benefits or to protect the fund used to pay those benefits.

3

Indeed, even Plaintiffs' ERISA claim against Regions in Count I is necessarily derived from this same inextricable interrelationship between the Trust Agreement and the ERISA Plans. Regions has no direct obligations under the documents creating the Plans and undertakes obligations involving the Plans only through the Trust Agreement. When Plaintiffs allege in their ERISA claim that Regions "violated the terms of the Plans and Trust" and should have to pay "the amounts that should have been paid to Plaintiffs as benefits under the terms of the Plans and the Trust" (doc. 19 at 27 (¶ 160)), what they mean is that Regions violated ERISA or the terms of the ERISA Plans through the Plan-related obligations Regions took on under the Trust Agreement and should therefore have to pay Plaintiffs their ERISA Plan benefits. Plaintiffs' state-law claims simply do the converse of this, seeking ERISA Plan benefits as the amount of damages based on alleged breaches of duties under the Trust Agreement that Regions could only owe to Plaintiffs based on the terms of the ERISA Plans.

A review of Plaintiffs' allegations regarding the terms of the Trust Agreement makes this abundantly clear. Indeed, near the end of their brief, Plaintiffs summarize their claims in an attempt to establish that those state-law claims do not require evaluation of the ERISA Plans' terms, but that summary just highlights the semantic nature of their arguments, as discussed below. The specific terms of the Trust Agreement upon which Plaintiffs base their claims are the very ones that provide for the trustee to take actions regarding the Plan, and all of Plaintiffs' claims—under ERISA or under state law—are based on the same conduct regarding the ERISA Plans and with the same ERISA Plan benefits as the alleged loss. The only difference between the ERISA claim in Count I and the state-law claims in Counts II through V is merely the label applied and the resulting elements to which the facts are applied.

**A. Plaintiffs' state-law claim for breach of fiduciary duty is derived from alleged duties owed to Plaintiffs "as participants," alleged breaches involving actions not taken regarding the Plans' solvency and termination, and the loss of the ERISA Plan benefits.**

For example, Plaintiffs assert that their "claim for breach of fiduciary duty under the terms of the state law governed Trust" requires "no need to scrutinize the terms of Plans." (Doc. 25 at 14). But the Amended Complaint contends that Regions breached state-law fiduciary duties owed to Plaintiffs "as [ERISA Plan] participants" by

> not conducting any inquiry upon the sale of [Ruby Tuesday, Inc.] to NRD [Capital] as to its obligations to fully fund the Trust, taking no action to see that the Trust was fully funded upon the change of control, not conducting any inquiry into the status of the Plans to determine that they had in fact been terminated by board resolution, not notifying the Plaintiffs of their rights to lump sum distributions from the Plans upon the board resolution to terminate, and failing to make those distributions to Plaintiffs.

(Doc. 19 at 28 (¶¶ 164-65)). Their alleged damages for these alleged failures? Plaintiffs "were deprived of *the retirement benefits to which they were entitled under the terms of the Plans* and the Trust." (*Id.* at 28 (¶ 166)) (emphasis added).[1] Not only do the alleged damages relate solely to Plaintiffs' ERISA Plan benefits, but each of the alleged breaches relates to an alleged duty that only exists in the first place because Plaintiffs are alleged to be ERISA Plan participants to whom ERISA Plan benefits are owed.

Plaintiffs' factual allegations began by noting that, under certain circumstances (which they allege exist here), Regions had the authority to take discretionary action without direction from Ruby Tuesday regarding the Plans, the Plans' participants and beneficiaries, and Plaintiffs' Plan benefits. (*See* doc. 19 at 19 (¶ 113)). Specifically, Plaintiffs allege that Regions obtained discretion

---

[1] As discussed above, Plaintiffs have no direct entitlement to anything under the Trust and could only be "entitled [to retirement benefits] under the terms of . . . the Trust" by essence of their entitlement to retirement benefits under the terms of the ERISA Plans.

to interpret the Plans to determine that "a participant's benefits under a Plan has become payable" for purposes of notifying and making payment to the participant or beneficiary. (Doc. 19 at 19 (¶ 113) (citing doc. 19-3 at 10-11 (§ 6(f))). Then, Plaintiffs allege that Regions failed to conduct an inquiry into the sale of Ruby Tuesday to NRD Capital and whether it implicated Regions's "obligations to fully fund the Trust" and, as a result, Regions failed to take any action "to see that the Trust was fully funded upon the change of control." (Doc. 19 at 28 (¶ 165)). These allegations are based on previous allegations that Regions was "required to take any and all legal action to enforce the obligations of each [ERISA] Plan Sponsor under the Trust Agreement," including that Plan Sponsors were required to "contribute to the Fund the amounts which are determined by the Trustee's Agent as necessary to fund the present value actuarial equivalent of *unpaid benefits accrued in favor of each participant under the Plans.*" (Doc. 19 at 19-20) (quoting doc. 19-3 at 7 (§ 5(a)), 18 (§ 13(f))) (emphasis added). Plaintiffs' allegations are essentially that Regions had obligations under the document governing the funding mechanism for the ERISA Plans to determine what benefits were owed under the ERISA Plans and ensure that the ERISA Plan Sponsors sufficiently funded the ERISA Plans to pay all of those unpaid ERISA Plan benefits. Plaintiffs also allege that Regions failed to conduct an inquiry into whether the ERISA Plans had been terminated and, as a result, it failed to follow *the terms of the ERISA Plans* by not notifying the ERISA Plan participants and beneficiaries of their rights under the terms of the Plans' termination provisions and not paying the lump-sum distributions of ERISA Plan benefits under those Plans' termination provisions. (*See* doc. 19 at 20-22 (¶¶ 121-31)).

According to Plaintiffs, these "fiduciary duties" were also based on Regions's duty to "act in the best interests of the Plaintiffs *as participants in the Plans*," (doc. 19 at 22 (¶ 130)) (emphasis added), and allegations that Regions had a duty to act "solely in the interest of the Plaintiffs *as*

*[Plan] participants*" and "act in accordance with the documents and instruments governing the Plans" *id.* at 28 (¶ 164)) (emphasis added). To the extent any of the alleged duties to Plaintiffs exist, it is because of the ERISA Plans, and Plaintiffs' claim for breach of fiduciary duty based on those alleged duties necessarily relates to those Plans.

**B.** **Plaintiffs' state-law claim for breach of trust necessarily relates to the ERISA Plans because it requires Plaintiffs to establish that they were participants or beneficiaries entitled to benefits under those Plans and they seek compensation solely for lost ERISA benefits.**

Similarly, with the "Breach of Trust" claim, Plaintiffs again assert there is "no need to scrutinize terms of Plans." (Doc. 25 at 15. But, Plaintiffs' allegations show that all of the alleged duties only flow to them in their capacity as ERISA Plan participants entitled to ERISA Plan benefits (*see* doc. 19 at 29 (¶¶ 168-71)); the alleged breaches were in failing to ensure that their ERISA Plan benefits remained fully funded by the trust, failing to notify Plaintiffs of rights under the Plans, and failing to pay Plan benefit distributions to Plaintiffs (*see id.* at 29 (¶ 172)); and their damages were the ERISA Plan "benefits they lost" (*id.* at 30 (¶ 174)).

Because the trust's only beneficiaries are Plan participants and beneficiaries, Plaintiffs referring to themselves as "beneficiaries of the Trust" in their allegations is merely a euphemism for their status as ERISA Plan participants and beneficiaries. All of their allegations assume—and ultimately require Plaintiffs to establish that—they are beneficiaries of a trust, the sole purpose of which is to hold funds to pay ERISA Plan benefits to ERISA Plan participants or their beneficiaries and does not define a group of beneficiaries outside of the ERISA Plans. Before Plaintiffs can prove that they were harmed by the alleged breaches of duty (which are themselves Plans-related), they first have to point to the terms of the ERISA Plans to prove that they were owed the alleged duties as ERISA Plan participants or beneficiaries entitled to ERISA Plan benefits held in the

Trust.  Plaintiffs' breach-of-trust claim cannot be extricated from the terms of the ERISA Plans and would not exist at all without those Plans.  It necessarily "relates to" them.

**C. Plaintiffs' breach-of-contract claim specifically alleges duties to them "as participants in the Plans" and alleges only failure to pay ERISA Plan benefits as the breach with loss of those ERISA Plan benefits as damages.**

Plaintiffs' assertion that there is "no need to scrutinize terms of Plans" for purposes of their breach-of-contract claim is even more absurd.  (*See* doc. 25 at 15).  Not only must they prove their own allegation that being "participants in the Plans" makes them "third party beneficiaries of the Trust," the sole alleged breach is "failing to provide the required distributions" of ERISA Plan benefits to Plaintiffs. (*See* doc. 19 at 30 (¶¶ 178-79)).  Moreover, their own allegations establish that the "distributions" were "required" pursuant to the terms of the Plans. (*See id.* at 20-22 (¶¶ 121-26)).  And, again, Plaintiffs' sole damages were that "they failed to receive the retirement benefits to which they were entitled" under the ERISA Plans. (*Id.* at 30 (¶ 180)).  Based on Plaintiffs' own allegations, this claim requires them to establish that they are Plan participants (under the terms of the ERISA Plans); that Regions failed to pay distributions (under terms of the ERISA Plans); and that Plaintiffs were entitled to, but did not receive, distributions of "retirement benefits" (under the terms of the ERISA Plans).  This claim is also inextricably intertwined with the terms of the ERISA Plans.

**D. Plaintiffs' negligence claim is based on alleged duties to Plaintiffs as Plan participants, the same Plan-related alleged breaches as the claim for breach of fiduciary duty, and the same loss of ERISA Plan benefits.**

Lastly, Plaintiffs' assertion that that there is "no need to scrutinize terms of Plans" for purposes of their negligence claim is likewise nonsensical.  (*See* doc. 25 at 15).  Plaintiffs' negligence claim requires them to show a duty, the breach of which caused them damages.  (*See* doc. 19 at 31 (¶¶ 182)).  Their allegations in support of those elements are that Regions failed to act with a reasonable standard of care regarding each of the same alleged duties upon which they

8

based their breach-of-fiduciary-duty claim and that, as a result, Plaintiffs "were deprived of their [ERISA Plan] distributions under the Trust." (Doc. 19 at 31 (¶¶ 183-85)). However, as discussed in relation to the fiduciary duty claim, all of the alleged actions were related to the ERISA Plans and Plan benefits, and, as with all of the other claims, Plaintiffs can only prove that Regions owed them a duty of care if they first prove that they were ERISA Plan participants or beneficiaries to whom benefits were owed under the ERISA Plans.

Altogether, Plaintiffs' argument that their state-law claims are based on the "Trust Agreement" and not the "Plans" is a semantic shell game. Plaintiffs' claims are that (1) Regions was unable to distribute Plaintiffs' ERISA Plan benefits because it failed to timely determine whether those ERISA Plan benefits were payable and to pay those ERISA plan benefits before the sponsor's insolvency and that (2) it failed to take actions to protect the solvency of the ERISA Plans by requiring contributions to the ERISA Plans' funding mechanism. Plaintiffs' claims do not exist but for the ERISA Plans, Plaintiffs' participation in it, and their entitlement to benefits under the Plans' terms. Plaintiffs cannot merely point to the Trust Agreement and say "pay no attention to the ERISA Plans behind the curtain," when those Plans are busily pulling the levers on all of their state-law claims.

Indeed, this is one of the major distinctions between this case and the ones Plaintiffs cite regarding non-fiduciary service providers. (*See* doc. 25 at 7 n.5). The issue in those cases did not, as Plaintiffs assert, turn on the fact that they did not seek to enforce ERISA fiduciary duties but that ERISA trustees were suing their own service providers directly on separate contracts tangential to the ERISA Plan. *See Kloots v. Am. Express Tax & Bus. Servs., Inc.*, 233 F. App'x 485, 489 (6th Cir. 2007) (finding that ERISA trustees' breach-of-contract suit against an accounting firm was based on oral agreement to provide fair market value of the company's stock,

not the ERISA-governed employee stock ownership plan); *Penny/Ohlmann/Nieman, Inc. v. Miami*

*Valley Pension Corp.*, 399 F.3d 692, 699-700 (6th Cir. 2005) (often referred to, as hereinafter, as

"*PONI*") (holding that ERISA Plans' claims based on ERISA plan were preempted even if the

defendant was a non-fiduciary but that claims against a second non-fiduciary were not preempted

where they were based solely on the service agreement with the plan and not on the plan terms).

Indeed, the Sixth Circuit has expressly noted the distinction between a beneficiary's claims against

non-fiduciaries, which are preempted, and a *plan's* claims against non-fiduciaries, which may or

may not be. *See Smith v. Provident Bank*, 170 F.3d 609, 615-17 (6th Cir. 1999) (holding that

"application of ERISA requires us to identify the role played by each party with respect to the

various claims" and "ERISA confers different rights on plans as entities unto themselves than it

confers on participants and beneficiaries").[2]

Here, Plaintiffs' claims are not based on any contractual relationship they have with

Regions independent of the ERISA Plan—but rather exist only to the extent they are ERISA Plan

participants entitled to ERISA Plan benefits and Regions violated some duty owed to them in

relation to the Plans. Such claims are preempted. *See Harrison v. TEAMCARE-A Cent. States*

---

[2] This direct-obligation distinction further explains the difference between preempted cases related to
ERISA plan benefits and the cases Plaintiffs cited in support of their assertion that their damages are not
claims for benefits, but simply "measured by the benefits they would have received from the Plans" (doc. 25
at 12) (citing *PONI*, 399 F.3d at 702; *Wright v. Gen. Motors Corp.*, 262 F.3d 610, 615 (6th Cir. 2001)).
Specifically, *PONI* distinguished between an *ERISA plan's* preempted claims based on its contract with a
fiduciary service provider and unpreempted claims based on its contract with a non-fiduciary. *See* 399 F.3d
at 702-03. In turn, the two cases the *PONI* opinion cited involved (1) a participant's tort claims for
discrimination and retaliation unrelated to the ERISA claim, the damages for which allegedly included lost
ERISA benefits, *see Wright*, 262 F.3d at 615, and (2) a participant's claim for breach of an employment
contract, damages for which included lost ERISA benefits, *see Marks v. Newcourt Credit Grp., Inc.*, 342
F.3d 444, 453 (6th Cir. 2003). Here, the allegedly "separate and distinct" contractual obligations are under
the Trust Agreement, which is itself entirely dependent on the ERISA Plans for its purpose and its
obligations. Plaintiffs' state-law claims are likewise entirely dependent on alleged duties (1) that flow to
Plaintiffs only if they are ERISA Plan participants entitled to benefits under the Plan and (2) that were only
breached by Regions's alleged failure to comply with the terms of the Plans to make distributions of Plan
benefits. This case is nothing like these other cases Plaintiffs have relied on.

*Health Plan*, 187 F. Supp. 3d 812, 822 (E.D. Ky. 2016) ("Harrison overlooks the fact that he would have no claims at all against HCSC, but for his participation in the employee benefit plan. For this reason, the Court finds that Harrison's state law claims against HCSC 'relate to' the plan."). In fact, the Sixth Circuit has specifically held that such claims are preempted by ERISA even in the context of a "top hat" plan. *See Loffredo v. Daimler AG*, 500 F. App'x 491, 496-97 (6th Cir. 2012).

## II. **Plaintiffs' state-law claims, as properly characterized, fall into all three categories of claims that are generally found preempted by ERISA.**

Plaintiffs next contend that their state-law claims do not fall into any of the three categories generally found preempted by ERISA. (*See* doc. 25 at 5-7.) However, their arguments are again largely semantic or based on form over substance. As discussed above, the alleged actions underlying Plaintiffs' state-law claims are inextricably intertwined with administration of the Plans and Plan benefits, and Plaintiffs' claims therefore cannot but "relate to" the Plans. Because of this interrelation, a review of the substance of Plaintiffs' claims show that they fall into all three of the preempted categories: "state laws that (1) mandate employee benefit structures or their administration; (2) provide alternate enforcement mechanisms; or (3) bind employers or plan administrators to particular choices or preclude uniform administrative practice, thereby functioning as a regulation of an ERISA plan itself." *PONI*, 399 F.3d at 698 (internal quotation marks omitted).

### A. **The fact that the Plans have been terminated does not render actions taken regarding the Plans exempt from ERISA, and the state-law claims would still affect administrators' choices for administration of Plan termination and winding down.**

Plaintiffs' argument that their state-law claims do not mandate employee benefit administration (*PONI*'s first category of generally preempted claims) or bind employers or plan administrators to particular choices or preclude uniform administrative practice (*PONI*'s third category of generally preempted claims) is based entirely on the fact that the Plans are now

terminated. (*See* doc. 25 at 5). But this argument assumes the erroneous premise that the application of state-law claims to the winding down of ERISA plans does not "mandate . . . administration" or bind employers or plan administrators to particular choices because the plan being wound down will no longer exist after Plaintiffs' claims are resolved. Plaintiffs' claims, however, assume that the state laws upon which they are based applied to administration of the Plans' ultimate termination, and, if applicable here, those state laws would have bound the choices the employers or plan administrators could make in setting up the Plans and their funding mechanism in the first place.

Plaintiffs' only support for their argument is negative authority, *i.e.*, that Regions has not cited cases about state-law claims based on a trust agreement after the termination of an ERISA plan. (Doc. 25 at 5). However, there can be no dispute that administration of the termination and winding down of an ERISA plan continue to be governed by ERISA. *See Benefits Comm. of Saint-Gobain Corp. v. Key Tr. Co. of Ohio*, 313 F.3d 919, 932 (6th Cir. 2002) (applying ERISA to distribution of funds from terminated ESOP); *Oak Point Partners, LLC v. Blue Cross Blue Shield of Michigan*, 446 F. Supp. 3d 195, 200 (E.D. Mich. 2020) (holding that post-termination reversionary interest in pension funds remained subject to ERISA so that successor to employer's interest had standing to sue under ERISA as a fiduciary). Where claims involve the administration of an ERISA plan and its benefits, it is irrelevant that the plan is "terminated" and the alleged actions involve the winding down of the plan.

Plaintiffs state no persuasive reason why their allegations about Regions' actions with respect to the Plans' termination and Plaintiffs' benefits thereunder would not also be related to ERISA, and they do not cite any authority for an exception to the authority showing that ERISA remains applicable to actions taken in relation to the winding down of an ERISA plan.

**B. Plaintiffs' state-law claims attempt to create an inappropriate alternate enforcement mechanism to fill an admittedly intentional gap in the ERISA scheme.**

Plaintiffs also argue that their claims do not fall into the second category (regarding claims that are preempted as creating an "alternate enforcement mechanism") because, according to Plaintiffs, the Sixth Circuit (and the other federal courts upon which it relied) were simply wrong when they directly addressed such preemption in the context of "top hat" plans. (*See* doc. 25 at 7-12). Specifically, Plaintiffs contend that, because ERISA does not apply its fiduciary-duty provisions to "top hat" plans, state-law causes of action based on alleged breaches of a fiduciary of an ERISA "top hat" plan do not interfere with ERISA's civil enforcement provision and are not preempted. (Doc. 25 at 7). But the Sixth Circuit directly addressed claims against a trustee of a "rabbi trust" that funded an ERISA "top hat" plan, and its analysis firmly establishes that it is Plaintiffs who are wrong. *See Loffredo*, 500 F. App'x at 493, 500, 502.

In *Loffredo*, the plaintiffs alleged that the defendants, knowing that the employer may be heading for bankruptcy, used trust assets to purchase annuities for some of the participating executives, leaving the plaintiffs relying solely on the "rabbi trust" for their benefits. *Id.* at 493-94. The plaintiffs alleged that the defendants hid all of this from the plaintiffs, who were unable to securitize their own benefits. *Id.* at 494. When the employer did in fact enter bankruptcy, the trust assets became part of the bankruptcy estate. *Id.* The plaintiffs sued the employer's corporate parent, the trustee of the "rabbi trust," and some of the employer's executives in state court, alleging state-law claims of promissory estoppel, breach of fiduciary duty, age discrimination, and fraud. *Id.*

Judge Sutton's opinion first acknowledged that it is well-established that ERISA applies to "top hat" plans, even though such plans are exempted from some of ERISA's substantive provisions. *Id.* at 494-95. He also notes that ERISA's express preemption provision applies

equally to all ERISA benefit plans, including "top hat" plans, preempting all state laws that "relate to" the ERISA plan. *Id.* at 495 (citing 29 U.S.C. § 1144(a); *Paneccasio v. Unisource Worldwide, Inc.*, 532 F.3d 101, 113 (2d Cir. 2008) (stating that the wording of the preemption provision "provides no basis for holding that, of the various administration and enforcement provisions, the preemption provision alone is inapplicable to top hat plans"); *Cogan v. Phoenix Life Ins. Co.*, 310 F.3d 238, 242 (1st Cir. 2002); *Olander v. Bucyrus-Erie Co.*, 187 F.3d 599, 604, 606 (7th Cir. 1999) (noting that "top hat" plans are subject to ERISA's enforcement provisions, including the preemption provision, even though they are excepted from certain other provisions)).

Plaintiffs do not dispute these conclusions. (*See* doc. 25 at 8 n.7).[3] Instead, Plaintiffs contend that reliance on *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41 (1987), is misplaced. (Doc. 25 at 8). Judge Sutton quoted the *Pilot Life* opinion, stating that "[t]he policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely undermined if ERISA-plan participants were free to obtain remedies under state law that Congress rejected in ERISA." *Loffredo*, 500 F. App'x at 495 (internal ellipsis omitted). In response, Plaintiffs assert that, in *Pilot Life*, the Court was only addressing claims based on improper processing of a disability claim, for which ERISA provides a cause of action for benefits, so the *Pilot Life* opinion's reasoning cannot be applied where no ERISA breach-of-fiduciary-duty claim exists. (Doc. 25 at 8-10).

However, Plaintiffs' argument ignores that the *Pilot Life* plaintiffs were asserting claims and seeking relief *beyond* that allowed under § 1132(a)(1)(B); yet, the Court still found those

---

[3] In the cited footnote, Plaintiffs contend that the preemption provision does not apply to claims against a "fiduciary of a top hat plan," whose breach is based on a trust, but Plaintiffs do not provide any substantive explanation for how this formalistic distinction is at all logically connected to their argument. The "Trust Agreement" incorporates the Plans, and Plaintiffs are only beneficiaries of the *trust* to the extent they are Plan participants or beneficiaries under the Plans. Without the Plans, Regions owes no duties to Plaintiffs.

claims preempted. *See* 481 U.S. at 57 (holding that state-law claims for bad faith and fraud in the inducement were preempted). And the Sixth Circuit has elsewhere cited *Pilot Life* in concluding that state-law claims for which there is no corresponding ERISA claim are still preempted. *See Tolton v. Am. Biodyne, Inc.*, 48 F.3d 937, 942-43 (6th Cir. 1995) (holding that wrongful death claim was expressly preempted). Indeed, in *Tolton*, the Sixth Circuit acknowledged that "[o]ne consequence of ERISA preemption . . . is that plan beneficiaries or participants bringing certain types of state actions—such as wrongful death—may be left without a meaningful remedy." *Id.* at 943. Similarly, the Sixth Circuit has also noted that, even though only certain relief was available against non-fiduciaries under ERISA, all of the claims against them related to the ERISA plan were preempted and "the relief provided by ERISA is the only relief available." *Smith*, 170 F.3d at 615. "It is not a valid argument against preemption to say that the state seeks to impose greater obligations than Congress did." *Id.* at 613.

Indeed, the Supreme Court has stated that even a "state-law cause of action that . . . *supplements* . . . the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 209 (2004) (emphasis added). *See also PONI*, 399 F.3d at 698 (holding that ERISA preempts state laws that "provide alternate enforcement mechanisms"). This case law is consistent with other courts that have addressed—and rejected—arguments that (like Plaintiffs') assert that state-law claims cannot be preempted because "top hat" plans are exempt from certain ERISA requirements. *See Paneccasio v. Unisource Worldwide, Inc.*, 532 F.3d 101, 113 (2d Cir. 2008) (rejecting this argument because "top hat plans are not exempt from ERISA's administration and enforcement provisions," one of which is the preemption provision, and that provision's "wording provides no basis for holding that, of the various administration and

enforcement provisions, the preemption provision alone is inapplicable to top hat plans"); *McZeal v. S. Consumers Coop, Inc.*, No. 05-1080, 2009 WL 1307943, at \*10 (W.D. La. May 7, 2009) ("[H]ad Congress envisioned a cause of action for negligence or negligent breach of fiduciary duty against top-hat plan administrators or fiduciaries, the ERISA statute would provide for such a claim.") (citing several cases finding claims, including breach of fiduciary duty, preempted in the "top hat" plan context); *Starr v. MGM Mirage*, No. 2:06CV00616RLH-RJJ, 2006 WL 3290299, at \*3 (D. Nev. Nov. 7, 2006) ("It is *because* ERISA exempts top hat administrators from fiduciary duties imposed on other plan administrators that Plaintiff cannot maintain a [state-law] cause of action for breach of fiduciary duty"). The *Loffredo* opinion was correct to conclude that "Congress's less-intrusive regulation of top-hat plans" did not provide space for "a more-intrusive system of state regulation"—"plaintiffs may not use state law to put back in what Congress has taken out." 500 F. App'x at 495, 496.

Plaintiffs' claims against Regions assume that Regions owed certain duties to Plaintiffs *as Plan participants* (1) to make sure that the *Plans* were fully funded for Plaintiffs' *Plan benefits* by enforcing contributions to the trust, (2) to notify Plaintiffs of their right—under the Plans—to make a claim for distribution of Plan benefits, and (3) to make those *distributions of Plan benefits*. (Doc. 19 at 27-31 (¶¶ 158-85)). Like the claims against the "rabbi trust" trustee in *Loffredo*, these state-law claims "relate to" the Plans and seek lost Plan benefits, and they are therefore preempted by ERISA as an attempt to use an alternate enforcement mechanism to the one Plaintiffs employ in Count I. *See Loffredo*, 500 F. App'x at 496 (concluding that breach-of-fiduciary-duty claims were preempted as an alternate enforcement mechanism), 497-98 ("[A] state law that gives ERISA plan participants rights to information by virtue of their status as participants in the plan conflicts with ERISA's existing disclosure requirements and enforcement mechanisms. Section 1144(a)

16

therefore expressly preempts these claims."), 502 (holding that allegations that defendants breached duties of notification that prevented plaintiffs from "tak[ing] steps to access [their] benefits prior to Chrysler's bankruptcy" were "attempting to create an 'alternate enforcement mechanism' to ERISA's vehicle for recovery of benefits"). Plaintiffs do not contend that any binding authority contradicts the *Loffredo* opinion's conclusions, only that *Pilot Life* does not mandate it. In fact, Plaintiffs do not point to any authority that contradicts the *Loffredo* opinion.

Instead, Plaintiffs make their own arguments that are the opposite of the weight of authority. For example, Plaintiffs argue that ERISA's "primary purpose" is "to protect ERISA participants" and that applying ERISA case law as the Sixth Circuit, other federal circuits, and district courts have done "does not further this purpose." (Doc. 25 at 11). Plaintiffs' only authority in support of their assertion that this should overrule the weight of authority is a citation to the *dissent* in *McLemore v. Regions Bank*, 682 F.3d 414 (6th Cir. 2012). (*See id.*). But, while Judge Merritt's citation to 29 U.S.C. § 1001b(c)(3) does support the conclusion that protecting ERISA participants is *one* of the purposes of ERISA, it does not support the conclusion that it is the "primary purpose." That provision also declares that one of ERISA's purposes is "to encourage the maintenance and growth of single-employer defined benefit pension plans." 29 U.S.C. § 1001b(c)(2). And the U.S. Supreme Court has expressly acknowledged that ERISA's enforcement mechanism represents a "careful balancing" of these purposes. *See Pilot Life*, 481 U.S. at 54. To strike that balance, "Congress created a robust enforcement regime under which employees could vindicate these federal rights and a robust preemption regime to protect employers from a patchwork of additional state-by-state requirements." *Loffredo*, 500 F. App'x at 494 (citing *Davila*, 542 U.S. at 208).[4]

---

[4] Indeed, the reason Judge Merritt was dissenting is because the *McLemore* majority's opinion concluded that, because the defendant was a non-fiduciary trustee and the plaintiffs' state-law claims related to the

Indeed, this is why Plaintiffs' other argument is so illogical. Plaintiffs concede that Congress did not provide the same substantive protections to "top hat" plans because the executive-suite participants in those plans had the bargaining power to not need the same protections as rank-and-file participants. (*See* doc. 25 at 11); *see also Loffredo v. Daimler AG*, No. 10-14181, 2011 WL 2262389, at \*4 (E.D. Mich. June 6, 2011) ("Congress exempted top-hat plans from ERISA's requirements because high-level executives have the bargaining power to negotiate particular terms and monitor their interest under the plan, and therefore do not need substantive protections (the minimum standards of pension plan content) or fiduciary obligations.") (quoting Peter J. Wiedenbeck, ERISA in the Courts 61 (Federal Judicial Center 2008)). But, without any support or explanation, Plaintiffs go on to assert that Congress *may* also have been signaling that "these participants also had the protection of state law claims for breach of contract, etc. to provide some level of protection against breaches by trustees subject to state law fiduciary requirements." (Doc. 25 at 11). This conclusion contradicts ERISA's intent to strike a balance between enforcement on behalf of participants and protections for employers to incentivize the creation of plans. *See Conkright v. Frommert*, 559 U.S. 506, 517 (2010) ("ERISA represents a 'careful balancing' between ensuring fair and prompt enforcement of rights under a plan and the encouragement of the creation of such plans. . . . ERISA induces employers to offer benefits by assuring a predictable set of liabilities, under uniform standards of primary conduct and a uniform regime of ultimate remedial orders and awards when a violation has occurred." (internal citations, quotation marks, and brackets omitted)). Congress determined that executive-

ERISA plan, the plaintiffs were limited to the relief ERISA provided against such defendants even if it did not include all of the other claims and relief that might otherwise be available. *See* 682 F.3d at 426. Here, Plaintiffs' claims against Regions all turn on their status as Plan participants and involve alleged fiduciary-like duties involving the Plans and Plaintiffs' Plan benefits that cannot but relate to the ERISA Plans, so Plaintiffs' claims regarding those allegations are preempted under § 1144(a). There is nothing "tenuous, remote or peripheral" about these claims' relation to the ERISA Plans.

suite plan participants did not need the protection of fiduciary obligations; at the same time, it determined that the employers continued to need ERISA's preemption provision's protection from a patchwork of state laws with respect to those plans. *See Paneccasio*, 532 F.3d at 108, 113 (explaining that "top hat" plans are exempt from "the participation and vesting, funding, and fiduciary responsibility requirements" but *not* ERISA's administration and enforcement provisions, like the preemption provision, and seeing "no reason to create an exception for top hat plans, and subject them to the impracticalities and counter-incentives of state-level interference in their administration"). Plaintiffs' state-law claims are preempted under the ERISA scheme, and the fact that Plaintiffs do not like how that scheme applies to their ERISA Plans does not change that.

In fact, it is not even that Plaintiffs have no ERISA remedy they can assert for Regions' alleged actions regarding the ERISA Plans and the trust that funds it—they assert one in Count I of their Complaint. Plaintiffs' grievance is that ERISA does not include every type of claim they could have brought under state law and the ERISA claims available may not provide them the specific relief they want against the specific defendant they have targeted. Neither of those is a proper basis to avoid preemption. *See Tolton*, 48 F.3d at 942-43; *Smith*, 170 F.3d at 615.

### III. Plaintiffs' state-law claims are inextricably intertwined with, and necessarily require interpretation of, the ERISA Plans.

Lastly, Plaintiffs contend that Regions' "argument in support of the dismissal of Plaintiffs' state law claims can be found in a single sentence" supported by a single citation to *Colburn v. Hickory Springs Manufacturing Co.*, 448 F. Supp. 3d 512 (E.D. N.C. 2020). (Doc. 25 at 13). This assertion, of course, is flatly contradicted by Regions' brief. To get from Regions' discussion of the law, particularly *Loffredo* (which Plaintiffs also extensively discussed in their Response) to Regions' citation of *Colburn* in its argument's conclusion, Plaintiffs had to skip over a full page

and a half discussion of Plaintiffs' allegations revealing the inextricable interrelatedness of the ERISA Plans and Regions' administration of the trust in relation to Plaintiffs' ERISA plan benefits and the winding down of the Plans. (*See* doc. 21 at 7-8).

Plaintiffs appear to want to pigeonhole Regions' argument into the *Colburn* case so that they can focus on that case being from an out-of-circuit district court and involving some different facts. (*See* doc. 25 at 12-14). But, by the time Regions cited this case, it had already discussed how Plaintiffs' claims were related to the ERISA Plans. The citation to *Colburn* was for that case's application of Sixth Circuit case law to an attempt to rescind a "top hat" plan and its related "rabbi trusts." (*See* doc. 21 at 8) (citing *Colburn*, 448 F. Supp. 3d at 530). Specifically, the *Colburn* opinion was comparing its facts to those in *Davies v. Centennial Life Ins. Co.*, 128 F.3d 934 (6th Cir. 1997), both of which involved state-law claims requiring interpretation of Plan documents. *Colburn*, 448 F. Supp. 3d at 530. Plaintiffs' laundry list of distinguishing facts are beside the point because none undermine the conclusion that a state-law claim that requires evaluation of the terms of an ERISA plan is "related to" that plan.

While it is true that the Plans' terms would be necessary to determine the benefit formula upon which to base Plaintiffs' damages, Plaintiffs' assertion that this would be the "only" need for reviewing the Plans' terms relies entirely on the form of their allegations and ignores their substance. (*See* doc. 25 at 15). As discussed in detail in Section I above, all of Plaintiffs' claims require resort to the Plans' terms before Plaintiffs can even establish that any of the alleged duties are owed to them, and none of their claims or damages exist without the Plans. There is no reasonable argument that Plaintiffs' claims do not "relate to" the ERISA Plans, and Plaintiffs are not allowed "to elevate form over substance" and "evade the pre-emptive scope of ERISA simply by relabeling their claims" under state law. *See Briscoe v. Fine*, 444 F.3d 478, 499 (6th Cir. 2006)

(internal quotation marks omitted).  Plaintiffs' state-law claims are inextricably intertwined with the terms of the Plans and Plaintiffs' claim for ERISA Plan benefits, and those state-law claims should be dismissed as preempted by ERISA.

## IV. Regions' earlier federal statutory interpleader complaint does not contradict Regions' preemption arguments in this case nor provide any ground for ERISA's express preemption not to apply.

Plaintiffs also assert that Regions' preemption arguments in this case are "in complete contradiction" to a complaint Regions filed in the completely different context of an interpleader plaintiff.  (*See* doc. 25 at 2-3).  The allegations Plaintiffs reference in the earlier interpleader regarding Regions' standing to assert an ERISA claim and allege the Court's subject matter jurisdiction over that claim are entirely different questions than Regions' assertions of ERISA's preemption of Plaintiffs' state-law claims in this case based on Plaintiffs' different factual allegations.

While it is true that the 2020 interpleader complaint involved the same general events as Plaintiffs' Amended Complaint, Regions alleged its interpleader complaint as a "directed trustee." (*see* doc. 19-7 at 2 (¶ 1)).  In this capacity, it was unclear whether Regions could interplead funds and assert ERISA jurisdiction as an ERISA fiduciary, *see* 29 U.S.C. § 1132(a)(3) (limiting suits to ERISA plan participants and beneficiaries or ERISA fiduciaries).  When it brought its interpleader complaint, Regions therefore chose to assert a more straightforward, federal statutory interpleader basis for the court's jurisdiction over its claim, thereby avoiding the issue of whether it had standing to assert a claim under ERISA.  Unlike with state law, ERISA expressly does *not* supersede other federal laws. *See* 29 U.S.C. § 1144(d).  Even so, nothing in Regions's federal

statutory interpleader complaint denied that ERISA could apply to issues raised in, or resulting from, the complaint.

The question here, on the other hand, is whether Plaintiffs' *state-law* claims—as Plaintiffs allege them on the facts as Plaintiffs allege them—would be preempted by ERISA's express preemption of "any and all *State laws* insofar as they may . . . relate to any employee benefit plan." *Id.* § 1144(a). There is no contradiction between these pleadings.

Moreover, it is not clear what Plaintiffs intend for this argument to prove. They do not tie it to any sort of argument for relief beyond giving them the opportunity to impugn Regions as "disingenuous." (Doc. 25 at 2-3). Regions' current arguments and their previous assertion of jurisdiction in the interpleader are not inconsistent, but, even assuming Plaintiffs' superficial inconsistency were a true conflict, they assert no ground for holding Regions to that earlier argument where the facts of this case so clearly show that Plaintiffs' state-law claims—which were not at issue in that earlier proceeding—are preempted by ERISA. Citing to diversity jurisdiction in an earlier action with different claims in a different court and asserting ERISA defensive preemption here does not warrant any sort of estoppel argument (which is presumably why Plaintiffs stop short of expressly arguing that). Ultimately, the earlier suit was dismissed before any real litigation occurred so no benefit or detriment to any party resulted from the alleged "contradiction." Plaintiffs' arguments against preemption have to stand or fall on their own merits.

## CONCLUSION

Because Plaintiffs cannot establish any of the alleged duties, breaches, or damages in their state-law claims absent the existence and interrelation of the ERISA Plans and the Trust Agreement acting as the funding mechanism for those Plans and instead impermissibly create an

alternate enforcement mechanism to ERISA, all of those claims are "related to" the ERISA Plans under 29 U.S.C. § 1144(a) and should be dismissed with prejudice.

Respectfully submitted by,

/s/ *William B. Wahlheim, Jr.*
William B. Wahlheim, Jr.
(BPR #31582)
*Attorney for Defendant Regions Bank*

**OF COUNSEL:**
MAYNARD, COOPER & GALE, P.C.
1901 Sixth Avenue North, Suite 1700
Birmingham, AL 35203-2602
Telephone: (205) 254-1000
Facsimile: (205) 254-1999
wwahlheim@maynardcooper.com

## <u>CERTIFICATE OF SERVICE</u>

        I hereby certify that a copy of the above and foregoing has been filed with the Court on this the 20th day of July, 2021, via the CM/ECF system and that the foregoing was served via the CM/ECF system by electronic mail or via U.S. mail, postage prepaid and properly addressed to the following:

        Al Holifield
        Kelly Mann
        Holifield & Janich, PLLC
        11907 Kingston Pike, Suite 201
        Knoxville, TN 37934
        *Attorneys for Plaintiffs*

                        /s/ *William B. Wahlheim, Jr.*
                        OF COUNSEL

24