UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

| | | |
|---|---|---|
| JERRY ALDRIDGE, *et al.*, | ) | |
| | ) | |
| Plaintiff, | ) | 3:21-CV-00082-DCLC-DCP |
| | ) | |
| vs. | ) | |
| | ) | |
| REGIONS BANK, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court to address Defendant's Motion to Change Venue [Doc. 12] and Motion to Dismiss Counts II through V of Plaintiffs' Amended Complaint [Doc. 20]. Plaintiffs filed a response in opposition to each motion [Docs. 24, 25] and Defendant filed replies [Docs. 29, 30]. This matter is now ripe for resolution. For the reasons that follow, Defendant's Motion to Change Venue [Doc. 12] is **DENIED** and its Motion to Dismiss is **GRANTED**.

**I.   BACKGROUND**

According to Plaintiffs' amended complaint, Plaintiffs are former employees of Ruby Tuesday, Inc. (RTI) and are from a number of states, including Alabama and Tennessee [Doc. 19, ¶¶ 2-99]. They were members in RTI's nonqualified retirement benefit plans, the Executive Supplemental Pension Plan (ESPP) and the Management Retirement Plan (MRP) (collectively, the Plans) [*Id.*, ¶ 1]. A predecessor of RTI established the ESPP in May 1984 and the MRP in June 1989 [*Id.*, pg. ¶ 106]. RTI's predecessor established an irrevocable trust (Trust) to fund the Plans, and the governing Trust agreement binds RTI [*Id.*, ¶ 108]. RTI funded the Plans and Trust through

corporate-owned life insurance policies that were assigned to, and held in, the Trust by Defendant Regions Bank [*Id.*, ¶ 109]. Regions Bank also served as the trustee [*Id.*, ¶ 1].

In 2017, NRD Capital (NRD) purchased RTI, which triggered a "change of control" clause in the Trust agreement [*Id.*, ¶¶ 111-12]. The "change of control" clause allowed Regions Bank to "exercise its own independent judgment and take certain actions independent of direction from RTI" [*Id.*, ¶ 113]. In the event of a change of control, the Trust agreement required that RTI fund the Plans fully, as determined by Regions Bank, and empowered Regions Bank, as trustee, to "take any and all legal action" to enforce RTI's obligations under the agreement [*Id.*, ¶ 115]. Plaintiffs assert that RTI never funded the Trust after the change of control and that Regions Bank failed to enforce the terms of the Trust agreement requiring RTI to fully fund the Trust [*Id.*, ¶¶ 117-20].

RTI's board of directors terminated the Plans on March 1, 2019, and authorized lump sum distributions to the Plans' members as soon as possible after March 1, 2020, but before March 1, 2021 [*Id.*, ¶ 121]. Plaintiffs explain that, although RTI's board of directors terminated the Plans, the Plans' members continued to receive monthly payments from March 1, 2020, through July 2020 [*Id.*, ¶ 132]. Plaintiffs assert that RTI failed to prepare to distribute the Trust's assets to members and that Regions Bank failed to enforce RTI's obligation to distribute the Trust's assets in lump sum distributions after March 1, 2020 [*Id.*, ¶¶ 127-30]. Plaintiffs also assert Regions Bank failed to notify members of the Plans of their rights to lump sum distributions [*Id.*].

According to Plaintiffs, RTI orally directed Regions Bank to suspend payments scheduled for August 1, 2020, under the Plans, which violated the terms of the Trust [*Id.*, ¶¶ 133-34]. On September 11, 2020, Regions Bank sent a letter to the Plans' members, explaining that RTI had notified Regions Bank on September 2, 2020, that it was insolvent [*Id.*, ¶¶ 136-37]. Plaintiffs

2

contend that Regions Bank had no notice before September 2, 2020, that RTI was insolvent and that it failed to pay benefits under the Plans for the months of August and September [*Id.*, ¶ 138].

Due to the uncertainty surrounding the payment of benefits under the Plans and Trust, Regions Bank filed an interpleader action on September 28, 2020, in the United States District Court for the Northern District of Alabama, seeking a declaration from the court determining the rights between RTI and participants in the Plans as to the funds held in the Trust [*Id.*, ¶¶ 140-46].

On October 7, 2020, RTI filed a Chapter 11 bankruptcy petition in the United States Bankruptcy Court for the District of Delaware [*Id.*, ¶ 147]. A week later, RTI moved the bankruptcy court for authorization to exercise ownership rights over the Trust's assets [*Id.*, ¶ 149]. Plaintiffs objected to RTI's motion in the bankruptcy court, but the bankruptcy court granted RTI's motion and authorized RTI to exercise ownership rights over the Trust [*Id.*, ¶ 150]. The bankruptcy court also ordered Regions Bank to liquidate all of the Trust's assets and direct the proceeds to RTI's bankruptcy estate [*Id.*]. The bankruptcy court allowed RTI and Regions Bank to terminate the Trust following the distribution of its assets [*Id.*]. Because of the bankruptcy petition and order directing Regions Bank to liquidate and transfer the Trust assets, Regions Bank filed a motion to dismiss the interpleader complaint for lack of subject matter jurisdiction, which the district court granted on November 25, 2020 [*Id.*, ¶ 151].

Plaintiffs assert that, because of Regions Bank's actions, they did not receive the benefits to which they were entitled under the Plans before the liquidation and termination of the Trust [*Id.*, ¶ 156]. In support of their amended complaint, Plaintiffs attach the ESPP agreement, MRP agreement, the 1992 Trust agreement, RTI's board of directors' resolution to terminate the Plans, the September 11, 2020, letter from Regions Bank, an August 1, 2020, letter from RTI notifying

3

the Plans' members that it would cease payments under the plans, and a copy of Regions Bank's interpleader complaint [Docs. 19-1, 19-2, 19-3, 19-4, 19-5, 19-6, 19-7].

Based on the preceding, Plaintiffs filed an amended complaint asserting a claim for equitable relief under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. 1132(a)(3), and claims under Alabama law for breach of fiduciary duties, breach of trust, breach of contract, and negligence [Doc. 19, ¶¶ 158-85]. Plaintiffs assert venue is proper in this District because Regions Bank is found in the Eastern District of Tennessee and Regions Banks' allegedly unlawful actions occurred in this District [*Id.*, ¶ 104]. Regions Bank now moves to transfer venue to the United States District Court for the District of Delaware for referral to the bankruptcy court and for dismissal of Plaintiffs' state law claims, respectively [Docs. 12, 20]. For ease of reference, the Court addresses each motion in turn.

## II.     MOTION TO CHANGE VENUE  [Doc. 12]

Regions Bank moves to transfer this case to the District of Delaware for referral to the bankruptcy court in that district [Doc. 13, pg. 5-6]. It contends the bankruptcy court can exercise jurisdiction over the present suit because the present suit is "related to" RTI's bankruptcy proceeding in Delaware [*Id.*, pg. 6]. It seeks transfer only pursuant to 28 U.S.C. § 1412 and not the general statute governing transfer under 28 U.S.C. § 1404.

According to Regions Bank, a court may transfer a case under § 1412 through one of two disjunctive prongs: (1) in the interests of justice; or (2) for the convenience of the parties [*Id.*, pgs. 7-8]. It asserts that transfer is in the interests of justice because it would "facilitate the economic and efficient administration of [RTI's] bankruptcy estate" [*Id.*, pg. 9]. It notes that many of the issues have already been litigated in bankruptcy court [*Id.*, pg. 12-13]. In support of its motion, Regions Bank attaches the claims it submitted to the bankruptcy court, the Trust agreement, and

4

emails between RTI and Regions Bank discussing payments to the Plans' members [Doc. 13-1]. It argues this case "is still in its infancy, and the parties have not conducted any discovery" [Doc. 13, pg. 10]. Additionally, it argues Tennessee has no interest in this case because the case involves Alabama state law claims [*Id.*]. Although it has branches in Tennessee, its headquarters is in Birmingham, Alabama [*Id.*]. Lastly, it contends that the convenience of the parties favors transfer because nearly 80% of Plaintiffs do not reside in the this District [*Id.*, pgs. 12-13].

Plaintiffs respond that Regions Bank's motion to change venue is not ripe because the Court has not addressed its related motion to dismiss their state law claims [Doc. 24, pg. 5]. Plaintiffs next argue that the present suit is not sufficiently "related to" the bankruptcy proceeding in Delaware to confer subject matter jurisdiction on that court under 28 U.S.C. § 1334 [*Id.*, pg. 6-8]. Plaintiffs contend that transfer is not in the interests of justice or in the interests of the parties [*Id.*, pg. 9-10]. Plaintiffs state that transferring the case to Delaware would not support the interests of the parties because Plaintiffs' counsel is in Tennessee and the acts occurred here [*Id.*, pg. 10].

Regions Bank replies, stating that the Court need not address its partial motion to dismiss first before determining whether to transfer the case to the District of Delaware [Doc. 30, pgs. 1-3]. It reiterates that this case is related to RTI's bankruptcy [*Id.*, pgs. 3-9]. Regions Bank also reiterates that the interests of justice and the convenience of the parties favor transfer [*Id.*, pgs. 9-12]. In support of its reply, Regions Bank attaches a transcript from the bankruptcy court where the bankruptcy court allowed RTI to exercise ownership rights over the Plans [Doc. 30-1].

A.   **Analysis**

Two different statutes authorize a district court to transfer a pending case to another district. Under 28 U.S.C. § 1404, the general change-of-venue statute, a district court may "transfer any civil action to any other district" for the "convenience of the parties and witnesses" or "in the

5

interest of justice." 28 U.S.C. § 1404. That statute applies to any civil action. The other change-of-venue statute—28 U.S.C. § 1412—is more limited in its application. Under § 1412, a district court can "transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties." 28 U.S.C. § 1412. Whereas § 1404 applies to any civil action, § 1412 is limited to "case[s] or proceeding[s] under title 11." *Id.*

But what constitutes "a case or proceeding under title 11"? Is § 1412 limited by its terms to only those cases or proceedings under title 11? Or does that statute also apply to cases that are not brought under title 11 but may relate to a case under title 11? Some courts have applied § 1412 to cases that relate to case under title 11. For example, in *Dwight v. Titlemax of Tenn., Inc.*, a district court used § 1412 to transfer a case that only "related to" a bankruptcy proceeding pending in Georgia. *Dwight v. Titlemax of Tenn., Inc.*, No. 1:09-CV-267, 2010 WL 330339, at *2 (E.D. Tenn. Jan. 21, 2010). The district court, however, did not elaborate on why § 1412 controlled as opposed to §1404. Several other courts within the Sixth Circuit have also applied § 1412 to transfer a case that *relates to* a case under title 11. *JWJ Hotel Holdings, Inc. v. W&H Realty, LLC*, No. 1:18-CV-454, 2018 WL 3772179, at *4–*5 (S.D. Ohio Aug. 9, 2018); *Holland v. FCA U.S. LLC*, No. 1:15-CV-121, 2015 WL 5172996, at *4 (N.D. Ohio Sept. 3, 2015); *Mello v. Hare, Wynn, Newell & Newton, LLP*, No. 3:10-CV-243, 2010 WL 2253535, at *3 (M.D. Tenn. May 30, 2010). In *RFF Fam. P'ship, LP*, the case that Regions Bank relies on to support its motion for transfer, the court determined that § 1412 rather than § 1404 applied by looking to "the plain language of § 1412, read in the context of [28 U.S.C.] § 1409 and the legislative history of the venue provisions of the bankruptcy code." *RFF Fam. P'ship, LP v. Wasserman*, No. 1:07-CV-1617, 2010 WL 420014 at *5 (N.D. Ohio Jan. 29, 2010).

Other courts have found that § 1412, by its own terms, is limited only to cases brought "under title 11" and does not extend to cases that merely relate to another case under title 11. *See Zohar CDO 2003-1, Ltd. v. Patriarch Partners, LLC*, 620 B.R. 456, 462 (S.D.N.Y. 2020) ("transferring pursuant to Section 1412 on a bare finding that only "related to" jurisdiction existed is contrary to a plain reading of the statute."); *see also Rumore v. Wamstad*, No. 01-2997, 2001 WL 1426680, at *2 (E.D. La. Nov. 13, 2001) ("Since section 1412 does not contain the phrase, 'or related to,' most courts have found that motions to transfer actions 'related to' title 11 cases should be governed by section 1404, the general change of venue provision.").

The Sixth Circuit has not explicitly addressed whether § 1412 applies to cases related to bankruptcy proceedings, but it has held that "§ 1412 applies *only to bankruptcy cases* that are properly venued in the first instance." *Thompson v. Greenwood*, 507 F.3d 416, 420 (6th Cir. 2007) (emphasis added). In analyzing the scope of § 1412, the Court begins with "the plain language of the statute." *Cowherd v. Million*, 380 F.3d 909, 913 (6th Cir. 2004) (internal quotations omitted). The Sixth Circuit emphasizes that, "[w]hen a statute is unambiguous, resort to legislative history and policy considerations is improper." *Id.* (internal quotations omitted); *see also United States ex rel. Felten v. William Beaumont Hosp.*, 993 F.3d 428, 431 (6th Cir. 2021) (stating that statutory language with a plain and unambiguous meaning does not allow a court to use "extra-textual" tools in its statutory interpretation). Section 1412 is clear; it pertains to "case[s] or proceeding[s] under Title 11." 28 U.S.C. § 1412. It does not, by its terms, include those cases that are not under title 11 but *relate to* others under title 11. The Court finds the omission of the "related to" language from § 1412 dispositive. In 28 U.S.C. § 1334, the statute addressing bankruptcy jurisdiction, Congress gave district courts "original but not exclusive jurisdiction of all civil proceeding arising under title 11, *or arising in or related to cases* under title 11." 28 U.S.C. § 1334(b) (emphasis

7

added). Section 1334 identifies two types of cases: those arising under title 11 and those that relate to other cases that arise under title 11. Congress could have included the "related to" phrase in § 1412 just as it did in § 1334. But it chose not to. Cases that only relate to other cases under title 11 are not themselves cases under title 11. The Court gives the phrase "under title 11" its ordinary meaning and limits the application of § 1412 to only those cases or proceedings under title 11. Resort to legislative history is unnecessary to interpret this statute.[1] *Cowherd*, 380 F.3d at 913; *see also Olden v. LaFarge Corp.*, 383 F.3d 495, 502 (6th Cir. 2004) (cautioning courts to resist the "strong incentive" to interpret unambiguous language as ambiguous to then resort to legislative history).

Plaintiffs' only federal claim is their ERISA claim, brought "under" title 29, not under title 11. [Doc. 19, ¶¶ 158-85]. Although Plaintiffs' ERISA claim relates to the bankruptcy proceeding in Delaware, the claim arises under a separate title of the federal code, not "under title 11." [*Id.*]. Thus, § 1412 does not apply. Accordingly, for the reasons stated herein, Defendant's Motion to Change Venue [Doc. 12] is **DENIED**.

### III. PARTIAL MOTION TO DISMISS

Regions Bank next moves to dismiss Plaintiffs' state-law claims [Doc. 21, pgs. 1-11]. It argues that ERISA preempts Plaintiffs' state-law claims related to the Plans [*Id.*, pg. 1-2, 6]. According to Regions Bank, Plaintiffs' state-law claims challenge "the manner in which [it] administrated the Trust through the Plans and [] seek[] benefits under the guise of state law damages [that] are expressly preempted." [*Id.*, pg. 6]. It contends that, for preemption purposes,

---

[1] Although a number of courts in the Sixth Circuit have determined that transfer under § 1412 is appropriate for cases related to bankruptcy proceedings, their analyses rest on the legislative history of the bankruptcy code and the changes that Congress made following the Supreme Court's decision in *N. Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50 (1982).

8

the exclusion of Plaintiffs' top-hat Plans from ERISA's fiduciary-responsibility provisions is irrelevant [*Id.*, pg. 6].[2] Regions Bank asserts that Plaintiffs' allegations are related directly to its role in administering the Trust and intertwined with the Plans [*Id.*, pg. 7-8]. It states that Plaintiffs seek to recover the value of their Plans' benefits in the form of distributions under the Trust [*Id.*]. Regions Bank also states that the alleged acts that form the basis of the state-law claims were made in the context of administering Plaintiffs' benefit claims [*Id.*, pgs. 8]. It notes that the recovery Plaintiffs seek would be based on the benefits due under the Plans [*Id.*, pg. 9].

Plaintiffs respond, opposing Regions Bank's motion to dismiss their state-law claims [Doc. 25, pgs. 1-16]. They do not dispute that the Plans were covered by ERISA. Plaintiffs assert that Regions Bank's arguments in its motion to dismiss contradict its position in its previous interpleader suit [*Id.*, pgs. 2-3]. They next argue that Regions Bank mischaracterizes their claims to support its preemption argument [*Id.*, pgs. 3-4]. They explain that their state-law claims do not fall within any of the categories of claims that are preempted by ERISA [*Id.*, pg. 5]. They state that the Trust is a funding mechanism and is not an "employee benefit plan" as defined in ERISA [*Id.*, pg. 5-6]. Plaintiffs assert that, although the terms of the Plans are incorporated into the Trust, that incorporation "does not affect the Trust's purpose as a vehicle for funding the Plans and is consistent with its operating separate and distinct from the Plans." [*Id.*, pg. 6].

Plaintiffs next contend that the Plans are not subject to the fiduciary provision of ERISA because the plans are top-hat plans [*Id.*]. They explain that their state-law claims are based on Regions Bank's status as trustee and that Alabama law shows that Regions Bank owed a duty to

---

[2] Top-hat plans are retirement plans that are unfunded and used primarily for providing deferred compensation for a select group of management or highly compensated employees. 29 U.S.C. § 1051(2); *see Bakri v. Venture Mfg. Co.*, 473 F.3d 677, 678 n.1 (6th Cir. 2007). These plans fall outside the coverage of certain ERISA provisions. *Bakri*, 473 F.3d at 678 n.1.

9

them to administer the Trust in accordance with the terms of the Trust agreement [*Id.*, pg. 7]. Plaintiffs state that, because there is no ERISA cause of action for breach of fiduciary duty of a top-hat plan, a state-law claim for the same would not interfere with the civil enforcement scheme of ERISA [*Id.*]. Plaintiffs next argue that their state-law claims do not seek benefits under an ERISA plan. [*Id.*, pg. 12]. Lastly, Plaintiffs assert that there is "no need to scrutinize" the terms of the Plans for any of their state-law claims [*Id.*, pgs. 14-15].

Regions Bank replies, reiterating its previous arguments [Doc. 29]. Regions Bank notes that the Trust agreement states that it is to be construed according to Alabama law and the laws of the United States, which includes ERISA [*Id.*, pg. 2]. It asserts that the fact that the Trust funds the Plans and governs how the Plans' benefits were paid means that the Trust is related to the Plans and the administration of the Plans [*Id.*, pg. 3]. Regions Bank states that the Trust agreement incorporates the terms of the Plans and that the Trust agreement refers to the beneficiaries as "participant or beneficiary under the Plans." [*Id.*]. It contends that it could only owe Plaintiffs the damages they seek because of the terms of the Plans [*Id.* pg. 4]. Regions Bank states that, to the extent it owes any duties to Plaintiffs, those duties exist because of the Plans [*Id.*, pgs. 6-7]. Lastly, Regions Bank argues that Plaintiffs' claims fall into all three categories of claims that are preempted by ERISA and that those claims require interpretation of the Plans [*Id.*, pgs. 11-21].

**A. Analysis**

Federal Rule of Civil Procedure 8(a)(2) requires the complaint to contain a "short plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) eliminates a pleading or portion thereof that fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A motion to dismiss under Rule 12(b)(6) requires the Court to construe the allegations in the

10

complaint in the light most favorable to the plaintiff and accept all the complaint's factual allegations as true. *Meador v. Cabinet for Human Res.*, 902 F.2d 474, 475 (6th Cir. 1990). The Court may not grant a motion to dismiss based upon a disbelief of a complaint's factual allegations. *Lawler v. Marshall*, 898 F.2d 1196, 1199 (6th Cir. 1990). The Court liberally construes the complaint in favor of the opposing party. *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995).

To survive dismissal, the plaintiff must allege facts that are sufficient "to raise a right to relief above the speculative level" and "to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678. Dismissal is appropriate "if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

Under 29 U.S.C. § 1144, ERISA preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). The Supreme Court has explained that Congress used language that was "deliberately expansive[] and designed to establish pension plan regulation as exclusively a federal concern." *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 46 (1987) (internal quotations omitted). Express preemption under § 1144 is a defense, and it is grounds for dismissal. *Wright v. Gen. Motors. Corp.*, 262 F.3d 610, 613 (6th Cir. 2001). Thus, state-law claims that are expressly preempted under § 1144 should be dismissed with prejudice because such claims interfere with ERISA's civil-enforcement regime. *Briscoe v. Fine*, 444 F.3d 478, 501 (6th Cir. 2006). "Congress meant for [§ 1144] to ensure that plans and plan sponsors would be subject to a uniform body of benefits law." *Sherfel v. Newson*, 768 F.3d 561, 566 (6th

11

Cir. 2014) (internal quotations omitted). Indeed, the Supreme Court reasoned that "[t]he policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely undermined if ERISA-plan participants . . . were free to obtain remedies under state law that Congress rejected in ERISA." *Pilot Life Ins. Co.*, 481 U.S. at 54.

A claim is expressly preempted if it is based on a state law that "may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). State-law claims "relate to" ERISA plans if they: "(1) mandate employee benefit structures or their administration; (2) provide alternate enforcement mechanisms; or (3) bind employers or plan administrators to particular choices or preclude uniform administrative practice, thereby functioning as a regulation of an ERISA plan itself" or otherwise seek a remedy that is "primarily plan-related." *Thurman v. Pfizer, Inc.*, 484 F.3d 855, 861 (6th Cir. 2007) (internal quotations omitted). The three categories above are disjunctive, and a claim can be preempted if it falls into one of the categories. *See id.* "A state law may therefore be preempted even if the law is not specifically designed to affect such plans, or the effect is only indirect." *Id.* "Thus, … even general state contract and tort laws may also be preempted by ERISA." *Id.*

Further, "any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted." *Aetna health Inc., v. Davila*, 542 U.S. 200, 209 (2004). Even if the facts of a case make "an ERISA action [unavailable] against particular defendants, the relief provided by ERISA is the only relief available." *Smith v. Provident Bank*, 170 F.3d 609, 615 (6th Cir. 1999). "[I]t is the nature of the claim . . . that determines whether ERISA applies, not whether the claim will succeed." *Id.* at 613. The Sixth Circuit has held that "[c]ommon law breach of fiduciary duty claims are clearly preempted by ERISA." *Id.*

12

Regions Bank relies heavily on *Loffredo v. Daimler AG*, 500 F. App'x 491 (6th Cir. 2012), and states that that case presents similar factual circumstances to the instant suit [Doc. 21, pg. 6]. In *Loffredo*, the plaintiffs were former executives and members of their employer's ERISA retirement plan who sued their employer and the bank that held the trust that funded the plan. *Loffredo*, 500 F. App'x at 493-94.[3] As with the instant suit, the plaintiffs' employer in *Loffredo* declared bankruptcy without fully funding the trust, thereby losing the plaintiffs most of their retirement benefits. *Id.* The plaintiffs brought a number of state-law claims against their former employer and the bank, including breach of fiduciary duty and silent fraud. *Id.* at 493. The Sixth Circuit found ERISA preempted the state-law claims because they related to the employer's ERISA plans. *Id.* at 502-03 (Moore, J., concurring). Specifically, as to the breach-of-fiduciary-duty claim, the court reasoned that, although ERISA's fiduciary-responsibility protections did not apply to the employer's top-hat plans for the plaintiffs, the nature of the claim determined whether ERISA preemption applied and not the claim's likelihood of success. *Id.* at 502. As to the silent-fraud claim, the court determined that "by seeking to hold the defendants liable for conduct that allegedly resulted in lost benefits without challenging the denial of benefits itself, [plaintiffs were] attempting to create an alternative enforcement mechanism to ERISA's vehicle for recovery of benefits." *Id.*

Here, Plaintiffs' state-law claims are expressly preempted under § 1144. Specifically, Plaintiffs' state-law claims relate to the Plans by providing an alternate enforcement mechanism from the civil-enforcement regime outlined in ERISA and, therefore, have been expressly preempted by Congress. *Thurman*, 484 F.3d at 861. Additionally, because state-law claims are

---

[3] As noted at the beginning of the opinion, Judge Moore's concurring opinion is the controlling opinion for the legal analysis,. *See Loffredo*, 500 F. App'x at 493.

preempted if they fall into one of the categories outlined above, the Court need not address whether Plaintiffs' state-law claims fall into the other two categories. *See id.*

Plaintiffs' state-law claims are intertwined with the Plans and are an attempt to enforce the Plans' terms against Regions Bank. [Doc. 19, ¶¶ 162-85]. As stated in their amended complaint, Plaintiffs seek relief for Regions Bank's alleged mishandling of the Trust that funded the Plans. [*Id.*]. Plaintiffs do not dispute that the Plans were covered by ERISA. Plaintiffs assert that Regions Bank owed them certain duties because of their status as Plan members. [*Id.*]. Further, Plaintiffs hope to recover the Plans' benefits they believe were lost because of Regions Bank's actions. [*Id.*]. Plaintiff's amended complaint makes clear that they are seeking to enforce the terms of the Plans through Alabama law rather than ERISA's regulatory scheme. Similar to the plaintiff in *Loffredo*, Plaintiffs do not challenge the denial of benefits directly and, instead, seek an alternative enforcement vehicle to recover those benefits. *See Loffredo*, 500 F. App'x at 502. Those claims, then, are expressly preempted because ERISA civil-enforcement regime is the only avenue of relief for vindication of Plaintiffs' rights under the Plans. *Smith*, 170 F.3d at 615.

Contrary to Plaintiffs' assertions, the exclusion of top-hat plans, like the Plans at issue here, from ERISA's fiduciary-responsibility provisions does not allow Plaintiffs to bring their state-law claims because it is the nature of the claim that determines whether preemption applies. *Id.* at 613. Moreover, their assertion that their breach-of-fiduciary-duty claim is not preempted because ERISA does not create a cause of action for such a claim is foreclosed by Sixth Circuit precedent. *Id.* Even if that claim were not foreclosed by precedent and an ERISA action is unavailable against Regions Bank, "the relief provided by ERISA is the only relief available" to Plaintiffs. *Id.* at 615. Similarly, Plaintiffs' argument that Regions Bank's position in the present suit is contrary to their position in its interpleader suit is inapposite. Plaintiffs do not argue that any form of preclusion or

14

waiver would prevent Regions Bank from moving for dismissal of their state-law claims.

Moreover, Plaintiffs own amended complaint belies their attempts to distinguish the Trust from the Plans. For example, Plaintiffs' breach-of-fiduciary-duty claim alleges that "Regions was a common law fiduciary of the Plans . . . . [and] had a duty to act with respect to the Plans solely in the interest of the Plaintiffs as participants." [Doc. 19, ¶ 164]. Plaintiffs' breach-of-trust claim alleges that Regions Bank failed to inform Plaintiffs of their rights under the Plans following the change of control and that Regions Bank failed to protect the trust property, which funded the Plans. [*Id.*, ¶¶ 171-73]. Similarly, Plaintiffs assert that they failed to receive the retirement benefits to which they were entitled under the Plans in their breach-of-contract claim. [*Id.*, ¶¶ 175-80]. Plaintiffs' negligence claim also seeks to recover damages for Regions Bank's failure to protect their interests in the Plans and alleges that Regions Bank breached the relevant standard of care by failing to take actions related to the administration of the Plans. [*Id.*, ¶¶ 181-85].

Therefore, Plaintiffs' state-law claims are expressly preempted under § 1144 because those claims create an alternative enforcement mechanism. Regions Bank's Motion to Dismiss [Doc. 20] is **GRANTED**.

IV. **CONCLUSION**

Accordingly, for the reasons stated herein, Defendant's Motion to Change Venue [Doc. 12] is **DENIED** and Defendant's Motion to Dismiss [Doc. 20] is **GRANTED**. It is hereby **ORDERED** that Plaintiffs' state-law claims against Defendant are **DISMISSED WITH PREJUDICE**.

SO ORDERED:

s/ Clifton L. Corker
United States District Judge