UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

| | |
|---|---|
| JERRY ALDRIDGE, et al., | ) |
| Plaintiffs, | ) |
| v. | ) 3:21-CV-00082-DCLC-DCP |
| REGIONS BANK, | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs, a group of 96 former employees of Ruby Tuesday, Inc. ("RTI"), initiated this action against Regions Bank ("Regions") alleging various state law causes of action and a claim for equitable relief pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq*. [Doc. 19]. The parties filed cross motions for summary judgment [Docs. 60, 61] and the Court heard oral argument on May 8, 2024. Thus, the motions are ripe for review.

**I.     BACKGROUND**

The relevant undisputed facts of this matter are fairly straightforward. Plaintiffs participated in two nonqualified deferred compensation plans offered by RTI: the Executive Supplemental Pension Plan ("ESPP") and the Management Retirement Plan ("MRP") (together, the "Plans") [Doc. 66, ¶¶ 3, 25; Doc. 69-1, ¶ 1]. Both were "top hat" plans, *i.e.*, they were established to provide retirement benefits to "a select group of management or highly compensated employees" [Doc. 66, ¶ 39]. Pursuant to a Trust Agreement executed by RTI and Regions' predecessors in 1992, the Plan benefits were paid out of assets held by Regions in an irrevocable

1

grantor trust ("the Trust"), commonly referred to as a "rabbi trust"[1] [*Id.* at ¶ 45]. The Trust assets were invested in company owned life insurance ("COLI") policies and, "like all rabbi trusts," were "treated as general assets of [RTI]" and "remain[ed] subject to the claims of the general creditors of [RTI]" [*Id.* at ¶¶ 44, 45].

This combination of a top-hat plan and a rabbi trust is "designed in such a way as to avoid any present taxation of its intended beneficiaries." *Loffredo v. Daimler AG*, No. 10-14181, 2011 WL 2262389, at *3 (E.D. Mich. June 6, 2011), *aff'd in part, rev'd in part*, 500 F. App'x 491 (6th Cir. 2012) (citation omitted). "[I]n return for this tax benefit, beneficiaries of such plans remain vulnerable to the risk of losing their benefits in the event of their employer's bankruptcy." *Id*. Unfortunately, that is precisely what happened here. However, Plaintiffs assert that Regions' conduct with respect to the Trust assets and Plan benefit payments deprived them of benefits they would have otherwise received prior to RTI's bankruptcy.

At all times relevant to the instant action, RTI was the Primary Sponsor of the Trust and Regions served as Trustee [Doc. 66 at ¶¶ 49, 54]. The Trust Agreement, which expressly incorporated the terms and conditions of the Plans, detailed RTI's and Regions' responsibilities and powers with respect to the Trust assets and Plan benefit payments [*See generally* Doc. 19-3]. Plaintiffs take the position that Regions violated the terms of the Plans and the Trust on multiple occasions from 2017 to 2020.

---

[1] "A 'rabbi trust' is a mechanism through which an employer may segregate top-hat plan funds without jeopardizing a plan's unfunded status." *Loffredo v. Daimler AG*, 666 F. App'x 370, 372 (6th Cir. 2016) (citation and internal quotations omitted). Under such arrangement, "[f]unds held by the trust are out of reach of the employer but are subject to the claims of the employer's creditors in the event of bankruptcy or insolvency." *Id.* (citation omitted). "Because the trust corpus technically remains property of the employer, the beneficiaries of the trust are not taxed on their portion of the Trust corpus or Trust proceeds until the assets are actually distributed to the beneficiaries." *In re Outboard Marine Corp.*, 278 B.R. 778, 785 (N.D. Ill. 2002), *aff'd sub nom. Bank of Am., N.A. v. Moglia*, 330 F.3d 942 (7th Cir. 2003).

First, in December 2017, NRD Capital ("NRD") purchased RTI, which Plaintiffs allege triggered a "change of control" under the Trust Agreement [Doc. 69-1, ¶¶ 9, 10]. In the event of a change of control, the relevant provisions of the Trust Agreement required that RTI fully fund the Plans and empowered Regions to "take any and all legal action" to enforce RTI's obligations [Doc. 19-3, pgs. 7, 18]. But after the alleged change of control, RTI did not fully fund the Trust, and Regions did not take any action to enforce RTI's obligation to do so [Doc. 69-1, ¶¶ 14, 15].

Then, in March 2019, RTI's board of directors terminated the Plans and authorized lump sum payments to Plan participants as soon as possible after March 1, 2020, but before March 1, 2021 [Doc. 66, ¶¶ 89, 90]. RTI never notified Regions of the termination and never directed Regions to distribute lump sum payments [*Id*. at ¶ 92]. Thus, Regions neither distributed the lump sum payments and the Plan participants continued to receive monthly payments from March 2020 through July 2020 [Doc. 69-1, ¶ 27].

In July 2020, RTI instructed Regions to cease benefit payments as of August 1, 2020, and Regions complied [Doc. 69-1, ¶ 29; Doc. 19-7, pg. 61]. The Trust Agreement, however, only provided for the suspension of payments upon written notice of insolvency from RTI [Doc. 19-3, pg. 13]. Specifically, the Trust Agreement provides:

> If the Trustee should receive any written allegation of the insolvency of the Plan Sponsor, the Trustee shall suspend payments to participants and hold the assets of the Trust for the benefit of the creditors of the Plan Sponsor and, within a period of thirty (30) days after the receipt of the written allegation, determine whether the Plan Sponsor is insolvent. If the Trustee determines that the Plan Sponsor is solvent, it shall immediately resume payments to the participants or their beneficiaries. In the event that the Trustee has actual knowledge of the insolvency of the Plan Sponsor, the Trustee shall hold the assets of the Trust for the benefit of the creditors of the Plan Sponsor in the manner directed by a court of competent jurisdiction.

[*Id*.]. On September 2, 2020, RTI provided written notice to Regions that it was insolvent [Doc. 61-8, pg. 370].

After receiving inquiries from Plan participants asking why payments had stopped, Regions filed an interpleader action in the Northern District of Alabama on September 28, 2020, seeking a declaration from the court regarding the rights between RTI and Plan participants as to the August and September 2020 plan payments [Doc. 66, ¶¶ 136, 144]. On October 7, 2020, however, RTI filed for Chapter 11 bankruptcy in the District of Delaware [*Id*. at ¶ 145] and, on November 19, 2020, the bankruptcy court ordered Regions to liquidate and transfer the Trust assets to RTI's bankruptcy estate [*Id*. at ¶ 146]. Thereafter, Regions moved to dismiss the interpleader action and complied with the bankruptcy court's order [Doc. *Id*. at ¶ 147].

Plaintiffs, as members of an *ad hoc* group of plan participants, filed proofs of claims and objected to the bankruptcy court's order, opposing liquidation of the Trust [*Id*. at ¶¶ 148, 149]. Ultimately, the *ad hoc* group stipulated to receive a pro-rata share of their claims from RTI in the bankruptcy case [*Id*. at ¶ 156] and some Plaintiffs recovered a portion of their benefit amounts from a third-party pursuant to a 1996 Tripartite Agreement [*Id*. at ¶ 160]. Despite those payments, Plaintiffs allege they lost over $35 million dollars in benefits [Doc. 96, pg. 19].

Based on the foregoing, Plaintiffs initiated the instant action against Regions alleging state law claims for breach of fiduciary duties, breach of trust, breach of contract, and negligence, along with a claim for equitable relief pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3) [Doc. 1]. Plaintiffs filed an Amended Complaint on May 31, 2021 [Doc. 19], and Regions subsequently moved, in relevant part, to dismiss Plaintiffs' state law claims [Doc. 20]. On October 8, 2021, the Court found Plaintiffs' state law claims to be preempted by ERISA, 29 U.S.C. § 1144(a), granted Regions' motion to dismiss, and dismissed Plaintiffs' state law claims with prejudice [Doc. 34, pgs. 11–15]. On February 16, 2024, the parties filed cross motions for summary judgment [Docs. 60, 61] on Plaintiffs' sole remaining claim for equitable relief under ERISA § 502(a)(3).

## II. LEGAL STANDARD

Summary judgment is proper where "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986) (quoting Fed.R.Civ.P. 56(c)). The moving party bears the initial burden of demonstrating that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248 (citation omitted). A mere "scintilla of evidence" is not enough; the Court must determine whether, viewing the record in the light most favorable to the nonmoving party, a fair-minded jury could return a verdict in favor of the nonmoving party. *Id.* at 251–52; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## III. DISCUSSION

Plaintiffs allege that "Regions violated its duties as Trustee by failing to adequately protect the Trust property for the benefit of the Plaintiffs as beneficiaries of the Trust, failing to inform the Plaintiff beneficiaries of their rights upon a Change of Control, failing to take action against RTI to enforce RTI's obligations under the Trust, and failing to distribute the benefits to Participants upon the termination of the Plans" [Doc. 60-7, pg. 23].[2] Thus, Plaintiffs seek equitable relief under ERISA § 502(a)(3) "in the form of equitable surcharge in the amounts that should

---

[2] Plaintiffs offer additional arguments in response to Regions' "claim of ignorance" as to the purchase of RTI by NRD and the termination of the Plans by the Board [Doc. 60-7, pgs. 16, 17, 20]. The parties also dispute the veracity of Regions' claimed "ministerial role" as Trustee and whether a "change of control" occurred under the terms of the Trust Agreement [Doc. 62, pgs. 9, 15; Doc. 67, pgs. 7, 9]. For the reasons provided herein, resolution of the foregoing disputes is not relevant to the disposition of the instant motions. Thus, the Court declines to discuss them further.

have been paid to [them] as benefits under the terms of the Plans and the Trust" [Doc. 19, ¶ 161]. Plaintiffs' ERISA claim, however, hits roadblocks at every turn.

As an initial matter, because the Plans are top-hat plans, they are exempt from ERISA's substantive fiduciary requirements. *See Simpson v. Mead Corp.*, 187 F. App'x 481, 483 (6th Cir. 2006). Plaintiffs concede this point but assert that "Regions is subject to Alabama state trust law, including any fiduciary duties provided thereunder" because the Trust Agreement provides that it is to be construed in accordance with Alabama law [Doc. 70, pg. 3; Doc. 19-3, pg. 18]. It is well-established, however, that "[w]hen Congress exempts a plan from ERISA's fiduciary-duty requirements, as it did with top-hat plans, plaintiffs may not use state law to put back in what Congress has taken out." *Loffredo v. Daimler AG*, 500 F. App'x 491, 496 (6th Cir. 2012); *see Simpson*, 187 F. App'x at 484 (in addressing a top-hat plan, the Sixth Circuit noted that "ERISA provides that federal law supersedes all state laws that relate to an ERISA plan.") (quotations and citations omitted). The Court previously dismissed Plaintiffs' claim for breach of fiduciary duty as being preempted by ERISA, and they cannot reassert that claim under the guise of ERISA § 502(a)(3). *See Goldstein v. Johnson & Johnson*, 251 F.3d 433, 443 (3d Cir. 2001) ("[I]t is well established in the caselaw that there is no cause of action for breach of fiduciary duty involving a top hat plan.").

Recognizing that "[t]op hot plans are a 'unique animal' among ERISA benefit plans[,]" Plaintiffs assert that federal common law rules of contract law apply to the Plans at issue [Doc. 70, pg. 3] (citations omitted). But even if Plaintiffs could demonstrate that Regions violated the terms of the Trust or the Plans under principles of federal common law, the relief available under ERISA § 502(a)(3) is limited. Section 502(a)(3) "allows a participant, beneficiary, or fiduciary 'to obtain other appropriate equitable relief' to redress violations . . . of ERISA 'or the terms of the plan.'"

6

*CIGNA Corp. v. Amara*, 563 U.S. 421, 438 (2011) (quoting 29 U.S.C. § 1132(a)(3)). "As used in § 502(a)(3) . . . 'equitable relief' refers to 'those categories of relief that were typically available in equity (such as injunction, mandamus, and restitution, but not compensatory damages).'" *Crosby v. Bowater Inc. Ret. Plan for Salaries Emps. of Great N. Paper, Inc.*, 382 F.3d 587, 594 (6th Cir. 2004) (quoting *Mertens v. Hewitt Associates*, 508 U.S. 248, 256 (1993)).

Here, Plaintiffs seek "equitable relief in the form of equitable surcharge to recompense [them] for losses caused by Regions' actions" [Doc. 19, pg. 31]. More specifically, they seek to recover the full amount of benefits they would have received under the Plans, plus interest [Doc. 60-7, pg. 23]. But Plaintiffs' requested relief is more akin to compensatory damages. "Almost invariably . . . suits seeking . . . to compel the defendant to pay a sum of money to the plaintiff are suits for 'money damages,' as that phrase has traditionally been applied, since they seek no more than compensation for loss resulting from the defendant's breach of legal duty." *Great-W. Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 210 (2002) (citation omitted). "And '[m]oney damages are, of course, the classic form of legal relief.'" *Id.* (quoting *Mertens*, 508 U.S. at 255).

Plaintiffs rely heavily on a line of cases following *CIGNA Corp. v. Amara*, in which the Supreme Court indicated that monetary relief is available under ERISA § 502(a)(3) in the form of an "equitable surcharge" for losses resulting from a fiduciary's breach of duty or to prevent unjust enrichment. 563 U.S. at 441. However, Plaintiffs have not alleged a theory of unjust enrichment and, as stated previously, Plaintiffs' ERISA claim based on a breach of fiduciary duty fails. Moreover, the Supreme Court more recently explained that its pre-*CIGNA* interpretation of the term "'equitable relief' . . . remains unchanged." *Montanile v. Bd. of Trustees of Nat. Elevator Indus. Health Benefit Plan*, 577 U.S. 136, 148 n.3 (2016) (citations omitted).

7

Accordingly, although Plaintiffs classify their requested relief as an "equitable surcharge," they are, in essence, seeking monetary compensation for the full amount of benefits they would have received under the Plans prior to RTI's Chapter 11 bankruptcy. But "ERISA § 502(a)(3) . . . does not, in most situations, authorize an action for money claimed to be due and owing." *Crosby*, 382 F.3d at 589. Additionally, "[t]o plead claims for equitable relief . . . [Plaintiffs] would have to allege either that [Regions] currently (and improperly) possess[es] the assets dispersed from the trust or that [it] retain[ed] profits generated from that property." *Loffredo v. Daimler AG*, 500 F. App'x at 499. It is undisputed that the Trust assets were liquidated, transferred to the bankruptcy estate, and disbursed to RTI's creditors. Thus, Plaintiffs cannot allege that Regions has possession of the assets which it seeks to recover, and they do not allege that Regions retained profits generated from the Trust assets. In sum, Plaintiffs' ERISA § 502(a)(3) claim against Regions fails as a matter of law.

## IV. CONCLUSION

For the reasons provided herein, Plaintiffs' Motion for Summary Judgment [Doc. 60] is **DENIED** and Regions' Motion for Summary Judgment [Doc. 61] is **GRANTED**. A separate judgment shall enter.

**SO ORDERED:**

s/Clifton L. Corker<br>
United States District Judge